# North Carolina
## DEPARTMENT OF INSURANCE
*Wayne Goodwin | Commissioner of Insurance*

### SERVICE OF PROCESS

March 27, 2014

Received
ACE
APR 0 1 14
Incoming Legal

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Illinois Union Insurance Company
436 Walnut Street
Post Office Box 1000
Philadelphia, PA 19106

Re:  **Bragg Communities, LLC; Bragg-Picerne Partners, LLC; Corvias Military Living, LLC; and Corvias Military Construction, LLC**
  **vs.**
  **Illinois Union Insurance Company**

Dear Corporate Secretary:

Enclosed herewith is a document entitled "**Civil Summons and Complaint with attached Exhibits A, B, C, and D**", which this Department received through the mail on March 26, 2014.

WAYNE GOODWIN
Commissioner of Insurance

*Gloria H. Glasco*

Gloria H. Glasco
Special Deputy for
Service of Process

Enclosure

**Bragg Communities, LLC; Bragg-Picerne Partners, LLC; Corvias Military Living, LLC; and Corvias Military Construction, LLC**

    **vs.**

**Illinois Union Insurance Company**

I, Gloria H. Glasco, a Special Deputy duly appointed for the purpose, do hereby accept service of the **Civil Summons** of Plaintiffs Bragg Communities, LLC; Bragg-Picerne Partners, LLC; Corvias Military Living, LLC; and Corvias Military Construction, LLC and adding Illinois Union Insurance Company as a Defendant, and acknowledge receipt of a copy of the same, together with a copy of the **Complaint with attached Exhibits A, B, C, and D**, under the provision of the North Carolina General Statute Sections 58-16-30 and 58-16-35 as process agent for Illinois Union Insurance Company.

This the 26th day of March, 2014.

WAYNE GOODWIN
Commissioner of Insurance

*Gloria H. Glasco*

Gloria H. Glasco
Special Deputy for
Service of Process

# STATE OF NORTH CAROLINA

_____CUMBERLAND_____ County

**FILED**

2014 MAR 20 A 10: 26

CUMBERLAND COUNTY, C.S.C.

BY_____

▶ File No. **14 CVS 2099**

In The General Court of Justice
☐ District ☒ Superior Court Division

## CIVIL SUMMONS

☐ ALIAS AND PLURIES SUMMONS (ASSESS FEE)

*Name of Plaintiff*
BRAGG COMMUNITIES, LLC,
BRAGG-PICERNE PARTNERS, LLC,
CORVIAS MILITARY LIVING, LLC, and
CORVIAS MILITARY CONSTRUCTION, LLC

*Address*

*City, State, Zip*

### VERSUS

*Name of Defendant(s)*
ILLINOIS UNION INSURANCE COMPANY

G.S. 1A-1, Rules 3, 4

*Date Original Summons Issued*

*Date(s) Subsequent Summon(es) Issued*

### To Each of The Defendant(s) Named Below:

| *Name And Address of Defendant 1* | *Name And Address of Defendant 2* |
|---|---|
| ILLINOIS UNION INSURANCE COMPANY<br>c/o Wayne Goodwin<br>NC Commissioner of Insurance<br>1201 Mail Service Center<br>Raleigh, NC 27609-1201 | ILLINOIS UNION INSURANCE COMPANY<br>c/o its Officer, Director or Managing Agent<br>525 W. Monroe Street, Suite 400<br>Chicago, IL 60661 |

### A Civil Action Has Been Commenced Against You!

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| *Name And Address of Plaintiff's Attorney (If None, Address of Plaintiff)*<br>John L. Shaw, Poyner Spruill LLP<br>P.O. Box 1801, Raleigh, NC 27602-1801<br>919-783-6400 / 919-783-1075 (fax)<br>jshaw@poynerspruill.com | *Date Issued* **3/20/14** | *Time* **10:26** ☑ AM ☐ PM |
|---|---|---|
| | *Signature* Ashley Mangus | |
| | ☑ Deputy CSC ☐ Assistant CSC ☐ Clerk of Superior Court | |

| ☐ **ENDORSEMENT (ASSESS FEE)**<br>This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | *Date of Endorsement* | *Time* ☐ AM ☐ PM |
|---|---|---|
| | *Signature* | |
| | ☐ Deputy CSC ☐ Assistant CSC ☐ Clerk of Superior Court | |

**NOTE TO PARTIES:** *Many counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $15,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.*

AOC-CV-100, Rev. 6/11
© 2011 Administrative Office of the Courts

(Over)

I certify that this Summons and a copy of the complaint were received and served as follows:

## DEFENDANT 1

| Date Served | Time Served ☐ AM ☐ PM | Name of Defendant |
|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason:

## DEFENDANT 2

| Date Served | Time Served ☐ AM ☐ PM | Name of Defendant |
|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to person named below.

Name And Address of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason.

| Service Fee Paid $ | Signature of Deputy Sheriff Making Return |
|---|---|
| Date Received | Name of Sheriff (Type or Print) |
| Date of Return | County of Sheriff |

AOC-CV-100, Side Two, Rev. 6/11
© 2011 Administrative of the Courts

NORTH CAROLINA

COUNTY OF CUMBERLAND

GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
14- CVS- *2099*

BRAGG COMMUNITIES, LLC, BRAGG-
PICERNE PARTNERS, LLC, CORVIAS
MILITARY LIVING, LLC, and CORVIAS
MILITARY CONSTRUCTION, LLC,

                              Plaintiffs,

vs.

ILLINOIS UNION INSURANCE
COMPANY,

                              Defendants.

**COMPLAINT**

CUMBERLAND COUNTY C.S.C.
2014 MAR 20  A 10: 6
FILED

Plaintiffs Bragg Communities, LLC, Bragg-Picerne Partners, LLC, Picerne Military

Housing, LLC and Picerne Construction/FBG, LLC (collectively "Bragg-Corvias"), by their

attorneys, state as follows for their Complaint against Defendants Illinois Union Insurance

Company ("Illinois Union").

### Introduction

1.      This is a breach of contract and declaratory judgment action arising from Illinois

Union's wrongful failure to defend and indemnify its insureds, Bragg-Corvias, with respect to a

Notice of Violation issued by the North Carolina Department of Environmental Natural

Resources under the Contractors Pollution Liability II Insurance Policy issued by Illinois Union

to Bragg-Corvias.

### The Parties, Jurisdiction and Venue

2.      Plaintiff Bragg Communities, LLC is a Delaware limited liability company with

its principal place of business at Fort Bragg, Cumberland County, North Carolina.   Bragg

Communities LLC is the named insured under the policy at issue.

3.     Plaintiff Bragg Communities, LLC's members include Bragg-Picerne Partners, LLC and the U.S. Department of the Army.   Bragg-Picerne Partners, LLC is a wholly-owned subsidiary of Corvias Military Living, LLC.

4.     Plaintiff Bragg-Picerne Partners, LLC is a Delaware limited liability company with its principal place of business in East Greenwich, Rhode Island.  Bragg-Picerne Partners LLC is an insured under the policy at issue.

5.     Plaintiff Corvias Military Living, LLC, formerly known as Picerne Military Housing, LLC, is a Rhode Island limited liability company with its principal place of business in East Greenwich, Rhode Island. Corvias Military Living, LLC is an insured under the policy at issue.

6.     Plaintiff Corvias Military Construction, LLC, successor by merger to Picerne Construction/FBG, LLC, is a Delaware limited liability company with its principal place of business in East Greenwich, Rhode Island.  Corvias Military Construction, LLC is an insured under the policy at issue.

7.     Defendant Illinois Union Insurance Company is an Illinois corporation with its principal place of business in Chicago, Illinois.

8.     Illinois Union is a subsidiary company of ACE U.S. Property and Casualty Insurance Company, which is commonly known as ACE Group.

9.     This Court has jurisdiction pursuant to North Carolina Code of Civil Procedure Sections 1-75.4(1)(d) and (10)(b) because Illinois Union is engaged in substantial activity within North Carolina, and because this action arises out of a contract of insurance between the parties and the event out of which the claim arises occurred in North Carolina.

2

10. This Court has venue pursuant to North Carolina Code of Civil Procedure Sections 1-80(2) and (3) because Illinois Union is regularly engaged in carrying on business in Cumberland County and because the cause of action arose in Cumberland County.

## The Fort Bragg Privatized Family Housing Project

11. The United States Army owns and operates Fort Bragg. Pursuant to various agreements and a fifty-year ground lease with the Army, Bragg Communities, LLC is the owner of the Fort Bragg Privatized Family Housing Project (the "Project"). As the owner, Bragg Communities, LLC develops, builds, owns and maintains the privatized family housing on Fort Bragg.

12. Various Corvias Military Living, LLC affiliates are involved in the development, construction and property management of the Project. For instance, Corvias Military Construction, LLC, was engaged by Bragg Communities, LLC to manage the construction and renovation of the privatized family housing at the Project. Corvias Military Construction, LLC is a wholly-owned subsidiary of Corvias Military Living, LLC. Bragg Communities, LLC, Bragg-Picerne Partners, LLC, Corvias Military Living, LLC, and Corvias Construction, LLC are collectively referred to as "Bragg-Corvias."

## Bragg-Corvias' Insurance Policy With Illinois Union

13. Bragg-Corvias obtained a number of insurance policies with respect to the Project.

14. Illinois Union underwrote the Contractors Pollution Liability II Insurance Policy that provides pollution legal liability insurance on a claims made basis for the operation and maintenance of an on-site water distribution and wastewater collection system at the Linden Oaks housing area located at Fort Bragg, North Carolina.

3

15.     Bragg Communities, LLC is the "First Named Insured" under the Illinois Union Policy.

16.     The Illinois Union Policy is a claims made pollution policy that was in effect from April 1, 2010 through April 1, 2013.

17.     The Illinois Union Policy has limits of liability of $10,000,000 per pollution condition and in the aggregate, with a $25,000 self-insured retention.

18.     The Illinois Union Policy is the primary pollution liability insurance that imposed upon Illinois Union a duty to defend and indemnify Bragg-Picerne for claims arising under the policy.

19.     A copy of the Illinois Union policy is attached to this Complaint as **Exhibit A.**

### The Linden Oaks Wastewater Contamination And
### The DENR Notice Of Violation

20.     On July 12, 2012, as part of the operations and maintenance of the on-site water distribution and wastewater collection system at 3 Brave Trail, Linden Oaks, Fort Bragg, a 10-inch force main sewer pipe failed causing sanitary sewage to be discharged and reach local surface waters.

21.     On August 24, 2012, the North Carolina Department of Environment and Natural Resources ("DENR") issued a Notice of Violation to Bragg-Picerne with respect to the contamination (the "DENR Notice of Violation"). A copy of the DENR Notice of Violation to Bragg-Picerne is attached as **Exhibit B.**

22.     Under the Illinois Union Policy, the July 12, 2012 discharge of sewage constituted a "pollution condition."

23.     Under the Illinois Union Policy, the DENR Notice of Violation constituted a "claim" on account of a "pollution condition."

4

24.     Under the Illinois Union Policy, the operation and maintenance of the on-site water distribution and wastewater collection system at 3 Brave Trail, Linden Oaks, Fort Bragg constituted "covered operations."

**Illinois Union Breaches Its Duty To Defend Bragg-Corvias**

25.     Bragg-Picerne tendered the DENR Notice of Violation to Illinois Union on November 8, 2012. A copy of Bragg-Corvias' November 8, 2012 Notice to Illinois Union is attached as **Exhibit C**.

26.     Following November 8, 2012, Illinois Union took no action with respect to the DENR Notice of Violation.

27.     Bragg- Corvias provided Illinois Union with documentation evidencing that Bragg- Corvias' defense and response costs for the DENR Notice of Violation exceeded the Illinois Union Primary Policy self-insured retention of $25,000.

28.     On March 29, 2013, Illinois Union responded to Bragg- Corvias for the first time and attempted to reserve its rights to deny indemnification under the Policy. A copy of Illinois Union's March 29, 2013 response letter is attached as **Exhibit D**.-

29.     After March 29, 2013, Illinois Union took no action, did not communicate with Bragg-Corvias, did not defend Bragg-Corvias and did not reimburse Bragg-Corvias for ongoing defense costs in connection with the DENR Notice of Violation.

30.     Illinois Union did not deny its duty to defend and indemnify Bragg-Corvias with respect to the DENR Notice of Violation.

31.     Because the DENR Notice of Violation concerned the release of contaminants into the environment, the DENR Notice of Violation was potentially covered under the Illinois Union Policy, thereby triggering Illinois Union's duty to defend Bragg-Corvias.

5

32.     The terms of the Illinois Union Primary Policy required Illinois Union to defend Bragg-Corvias with respect to the DENR Notice of Violation and to indemnify Bragg-Corvias with respect to all damages associated with responding to and complying with the Notice of Violation up to the limit of liability of the Illinois Union Policy.

33.     Having breached its duty to defend Bragg-Corvias with respect to the DENR Notice of Violation, Illinois Union is estopped from raising any defenses to its obligation to indemnify Bragg-Corvias with respect to the DENR Notice of Violation.

### Bragg-Picerne's Defense And
### Settlement Of The DENR Notice Of Violation

34.     Bragg-Corvias retained attorneys and defended itself against the DENR Notice of Violation.

35.     Bragg-Corvias negotiated with DENR such that the investigation, removal, remediation and restoration of the broken force main will satisfy the Notice of Violation.

36.     Bragg-Corvias' defense costs and settlement negotiations with DENR involved the payment of sums in excess of the jurisdictional limit of $10,000. and in excess of Illinois Union's self-insured retention, including, but not limited to, investigation, removal, remediation and restoration costs associated with the contamination and property damage.

### COUNT I
### Breach of Contract

37.     As its paragraph 47, Bragg-Corvias restates the allegations of paragraphs 1-36 as if fully set forth herein.

38.     The Illinois Union Primary Policy is a contract.

39.     Bragg-Corvias has fulfilled all of the conditions required of it under the terms of the Illinois Union Policy.

40.     Bragg-Corvias timely tendered the DENR Notice of Violation to Illinois Union for defense and indemnification.

41.     The DENR Notice of Violation was, at a minimum, potentially covered under the Illinois Union Policy.

42.     Illinois Union failed to defend Bragg-Corvias with respect to the DENR Notice of Violation.

43.     Illinois Union's failure to defend Bragg-Corvias with respect to the DENR Notice of Violation constitutes a breach of the contract and a breach of Illinois Union's duty to defend Bragg-Picerne.

44.     Bragg-Corvias has been damaged by Illinois Union's breach of its duty to defend Bragg-Picerne.

45.     Having breached the duty to defend Bragg-Corvias, Illinois Union must indemnify Bragg-Corvias for the DENR Notice of Violation up to the limit of the Illinois Union Policy.

WHEREFORE, Plaintiffs Bragg Communities, LLC, Bragg-Picerne Partners, LLC, Corvias Military Living, LLC and Corvias Military Construction, LLC request that this Court: (1) enter judgment in favor of Plaintiffs and against Defendant on Count I; (2) award damages to Plaintiffs in excess of $10,000; (3) award Plaintiffs their reasonable attorneys' fees, costs and expenses; and (4) award Plaintiffs any other such relief as this Court deems just and proper.

## COUNT II
### Declaratory Judgment

46.     As its paragraph 46, Bragg-Corvias restates the allegations of paragraphs 1-36 as if fully set forth herein.

47.     There currently exists an actual controversy with respect to whether Illinois Union owed Bragg-Picerne a duty to defend with respect to the DENR Notice of Violation. Hence, this Court has jurisdiction pursuant to the North Carolina Declaratory Judgment Act, N.C. Gen. Stat. § 1-253, *et seq.*

WHEREFORE, Bragg-Picerne requests that this Court enter a judgment declaring that: (1) Illinois Union owed Bragg-Picerne a duty to defend with respect to the DENR Notice of Violation; (2) Illinois Union breached its duty to defend Bragg-Picerne with respect to the DENR Notice of Violation; and (3) having breached its duty to defend Bragg-Picerne, Illinois Union is estopped from contesting its duty to indemnify Bragg-Picerne with respect to the DENR Notice of Violation.

## COUNT III
### Violation Of The Unfair And Deceptive Trade Practices Act

48.     As its paragraph 48, Bragg-Corvias restates the allegations of paragraphs 1-36 as if fully set forth herein.

49.     Bragg-Corvias and Illinois Union had a contract for insurance coverage (*i.e.,* the Illinois Union Policy).

50.     Bragg-Corvias timely tendered a valid claim to Illinois Union.

51.     Despite that timely tender, Illinois Union failed to investigate Bragg-Corvias' claim, failed to defend Bragg-Corvias in connection with the DENR Notice of Violation, failed to indemnify Bragg-Corvias with respect to the Notice of Violation.

52.     Bragg-Corvias has expended considerable sums to defend itself against and to comply with the DENR Notice of Violation, which should have been paid by Illinois Union.

53.     In addition, Illinois Union has violated Article 63 of the North Carolina Insurance Code in the several respects, including but not limited to:

8

(a)    Illinois Union failed to act promptly on Bragg-Corvias' communications regarding the DENR Notice of Violation;

(b)    Illinois Union failed to make good faith efforts to effectuate a prompt, fair and equitable settlement of Bragg-Corvias' claim after it became clear that Bragg- Bragg-Corvias' claim was covered under the Policy;

(c)    Illinois Union refused to indemnify Bragg-Corvias with respect to the DENR Notice of Violation without conducting a reasonable investigation; and

(d)    Illinois Union failed to promptly provide Bragg-Corvias e with a reasonable explanation of the basis in the Policy that, in relation to the facts and applicable law, provided a basis for Illinois Union's refusal to defend and indemnify Bragg-Corvias with respect to the DENR Notice of Violation.

54.    Illinois Union's violation of the Unfair Trade Practices article of the North Carolina Insurance Code constitutes a violation of the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1, *et seq.*

55.    Illinois Union's conduct occurred in commerce and affected commerce.

56.    As a result of Illinois Union's conduct, Bragg-Corvias erne has been damaged.

57.    Illinois Union's refusal to defend and indemnify Bragg-Corvias in connection with the DENR Notice of Violation was willful and unwarranted.

WHEREFORE, Plaintiffs Bragg Communities, LLC, Bragg-Picerne Partners, LLC, Corvias Military Living, LLC and Corvias Military Construction, LLC request that this Court: (1) judgment be entered in favor of Plaintiffs and against Defendants on Count III; (2) award damages to Plaintiffs in excess of $10,000; (3) award Plaintiff treble damages; (4) award

9

Plaintiffs their reasonable attorneys' fees, costs and expenses; and (5) award Plaintiffs any other such relief as this Court deems just and proper.

## COUNT IV
### Common Law Bad Faith

58. As its paragraph 58, Bragg-Corvias restates the allegations of paragraphs 1-36 as if fully set forth herein.

59. Illinois Union knew there was no legitimate or arguable reason for its refusal to defend and indemnify Bragg-Corvias in connection with the DENR Notice of Violation and/or intentionally failed to determine whether such a legitimate or arguable reason existed.

60. Bragg-Corvias has expended considerable sums to defend itself against and to comply with the DENR Notice of Violation, which should have been paid by Illinois Union.

61. Illinois Union's conduct constitutes gross negligence and a wanton and reckless disregard of Bragg-Corvias' rights.

62. Bragg-Corvias has been damaged by Illinois Union's bad faith failure to defend and indemnify Bragg-Picerne in connection with DENR Notice of Violation.

WHEREFORE, Plaintiffs Bragg Communities, LLC, Bragg-Picerne Partners, LLC, Corvias Military Living, LLC and Corvias Military Construction, LLC request that this Court: (1) enter judgment in favor of Plaintiffs and against Defendants on Count IV; (2) award damages to Plaintiffs in excess of $10,000; (3) award Plaintiffs punitive damages and/or treble damages; (4) award Plaintiffs their reasonable attorneys' fees, costs and expenses; and (5) award Plaintiffs any other such relief as this Court deems just and proper.

Dated: March 19, 2014.

POYNER SPRUILL LLP

By: _John L. Shaw_

John L. Shaw
N.C. State Bar No. 3950
P.O. Box 1801
Raleigh, NC 27602-1801
Telephone: 919.783.6400
Facsimile: 919.783.1075
Email: jshaw@poynerspruill.com

Charles L. Philbrick (Pro Hac Vice
pending)
Emily A. Shupe (Pro Hac Vice pending)
Rathje & Woodward, LLC
300 East Roosevelt Road, Suite 300
Wheaton, IL 60187
Tel. 630-668-8500
Fax. 630-510-4931

ATTORNEYS FOR BRAGG-PICERNE
PARTNERS, LLC, CORVIAS
MILITARY LIVING, LLC, AND
CORVIAS MILITARY
CONSTRUCTION, LLC

11



Illinois Union Insurance Company

# Contractors Pollution Liability II
# Insurance Policy
# Claims-Made Coverage
## (Declarations)

This Policy is issued by the stock insurance company listed above (herein called the "Insurer").

THIS IS A CLAIMS MADE POLICY. PLEASE READ THIS POLICY CAREFULLY. SOME OF THE PROVISIONS CONTAINED IN THIS POLICY RESTRICT COVERAGE, SPECIFY WHAT IS AND IS NOT COVERED AND DESIGNATE RIGHTS AND DUTIES. LEGAL DEFENSE EXPENSES ARE SUBJECT TO AND WILL ERODE THE LIMITS OF LIABILITY AND ANY APPLICABLE SELF-INSURED RETENTION.

THE DECLARATIONS, TOGETHER WITH THE COMPLETED AND SIGNED APPLICATION, THIS POLICY, AND ANY ENDORSEMENTS OR SCHEDULES ATTACHED HERETO, CONSTITUTE THE INSURANCE POLICY.

| Policy No.: CPM G23899048 002 | Renewal of: CPM G23899048 001 | |
|---|---|---|
| Item 1. | First Named Insured: | Bragg Communities, LLC |
| | Address: | 1405 South County Trail, Suite 530<br>East Greenwich, RI 02818 |

| Item 2. | Policy Period:<br>Local Time of the Address Shown in Item 1. | Policy Inception Date:<br>04/01/2010 12:01 A.M. | Policy Expiration Date:<br>04/01/2013 12:01 A.M. |
|---|---|---|---|
| Item 3. | Retroactive Date: | 04/01/2007 | |
| Item 4. | Limits of Liability: | a. $ 10,000,000 Per Claim Limit<br><br>b. $ 10,000,000 Aggregate Limit | |
| Item 5. | Self-Insured Retention: | $ 25,000 Per Loss | |

| Item 6. | Premium:<br>In US Dollars | $32,879 |
|---|---|---|
| | | (The entire amount of this premium shall be 25% minimum earned as of the first day of the Policy Period indicated in Item 2. above.) |

**EXHIBIT**

A

tabbies

| Item 7. | | a. Notice of Claim or Pollution Condition | b. All other Notices |
|---|---|---|---|
| **Notices** | | Environmental Risk Claims Manager<br>ACE USA Claims<br>P.O. Box 5103<br>Scranton, PA 18605-0510<br>Fax: (866) 635-5687<br><br>First Notice Fax: (877) 201-6866<br>First Notice Email: CasualtyRiskEnvironmentalFirstNotice@acegroup.com | Environmental Risk Underwriting Officer<br>ACE Environmental Risk<br>P.O. Box 1000<br>436 Walnut Street – WA 07A<br>Philadelphia, PA 19106 |
| | | 24 Hour Emergency Response Hotline | 1-888-310-9553 |

| Item 8. | Covered Operations: | Operation/maintenance of on-site water distribution and wastewater collection system at the Linden Oaks housing area located at Fort Bragg, NC<br><br>☐ If checked here, schedule of Covered Operations is designated via endorsement. |
|---|---|---|

| Item 9. | Producer:<br>Name & Address | USI Insurance Services of Massachusetts Inc<br>12 Gill Street<br>Woburn, MA 01801 |
|---|---|---|

Policy Form No. PF-21864 (02/07) Contractors Pollution Liability II Insurance Policy; Claims-Made Coverage

Endorsements and Notices Attached at Policy Issuance:

| Endorsement Number: | Form Number: | Form Name: |
|---|---|---|
| 001 | PF-22129 (04/07) | CPLC II Automobile Endorsement |
| 002 | PF-22137 (04/07) | Exterior Insulation And Finish System (EIFS) Exclusion Endorsement |
| 003 | PF-22140 (04/07) | Fungi Exclusion Endorsement |
| 004 | PF-22150 (04/07) | Notice Of Cancellation - 90 Days Endorsement |
| 005 | PF-22155 (04/07) | Primary Insurance Endorsement |
| 006 | PF-22563 (06/07) | OCIP Endorsement |
| 007 | PF-27906 (08/09) | Coverage Territory Amendatory (United States Claims Only) Endorsement (CPL) |
| 008 | PF-28848 (02/10) | Non-Owned Disposal Sites Coverage (Blanket) with Sublimit Endorsement (CPLC II) |
| 009 | PF-29283 (04/10) | Schedule of Additional Insureds Endorsement (CPL CM) |
| 010 | ALL-21101 (11/06) | Trade Or Economic Sanctions Endorsement |
| 011 | XS-3U96f (02/06) | Service Of Suit Endorsement |
| 012 | LD-5S23g (02/05) | Signature Endorsement |
| | SL-24696 (03/08) | Rhode Island Surplus Lines Notification |
| | TRIA15c (01/08) | Policyholder Disclosure Notice Of Terrorism Insurance Coverage |
| | IL P 001 (01/04) | U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") Advisory Notice To Policyholders |
| | ALL-20887 (10/06) | ACE Producer Compensation Practices & Policies |

IN WITNESS WHEREOF, the Insurer has caused this Policy to be countersigned by a duly authorized representative of the Insurer.

DATE:      April 01, 2010

       MO/DAY/YR                         *Willis P Horton*

                                         AUTHORIZED REPRESENTATIVE

PF-22348b (04/08)            © 2008                          Page 2 of 2

 Illinois Union Insurance Company

# Contractors Pollution Liability Insurance Policy

## Claims Made Coverage

This Policy is issued by the stock insurance company listed above (herein called the "Insurer").

**THIS IS A CLAIMS MADE POLICY. PLEASE READ THIS POLICY CAREFULLY. SOME OF THE PROVISIONS CONTAINED IN THIS POLICY RESTRICT COVERAGE, SPECIFY WHAT IS AND IS NOT COVERED AND DESIGNATE RIGHTS AND DUTIES. LEGAL DEFENSE EXPENSES ARE SUBJECT TO AND WILL ERODE THE LIMITS OF LIABILITY AND ANY APPLICABLE SELF-INSURED RETENTION.**

Throughout this Policy the words "the Insurer" shall refer to the company providing this insurance. Other words and phrases that appear in quotation marks have special meanings and are defined in Section V. – Definitions.

In consideration of the payment of the Premium and in reliance upon all statements made in the Application to this Policy, including the information furnished in connection therewith, and subject to all terms, definitions, conditions, exclusions, and limitations of this Policy, the Insurer agrees to provide insurance coverage to the "insured" as described herein.

## I. INSURING AGREEMENT

To pay on behalf of the "insured" all "loss" incurred in excess of the "self-insured retention" which the "insured" becomes legally obligated to pay, resulting from "claims" arising from a "pollution condition(s)".

This insurance shall only apply if:

1. The "pollution condition(s)" results from "covered operations"; and

2. The "claim" is first made against the "insured" and reported to the Insurer, in writing, during the "policy period", or "extended reporting period", if applicable; and

3. The "covered operations" which result in a "claim" first commence on or after the Retroactive Date, if any, shown in Item 3. of the Declarations and before the end of the "policy period". If no Retroactive Date is shown in the Declarations, the "covered operations" must first commence during the "policy period".

## II. LIMITS OF LIABILITY AND SELF-INSURED RETENTION

A. It is expressly agreed that liability for any "loss" shall attach to the Insurer only after the "insured" shall have paid, in the applicable legal currency, the full amount of the "self-insured retention" for "loss" covered under the Policy. Under no circumstances shall the Insurer be liable to pay any amount within the "self-insured retention".

B. The "self-insured retention" shall apply to all "claim(s)", "remediation cost(s)", and "legal defense expense(s)" arising from the same, continuous, repeated or related "pollution condition".

C. The Aggregate Limit shown in Item 4.b. of the Declarations shall be the maximum liability of the Insurer under this Policy with respect to all "loss" during the "policy period" irrespective of the time of payment by the Insurer.

D. Subject to Paragraph C. above, the Per Claim Limit shown in Item 4.a. of the Declarations is the most the Insurer shall pay for all "loss" arising from the same or related "pollution condition".

## III. DEFENSE AND SETTLEMENT

A. Except as otherwise specified in Section IV. of this Policy, the Insurer will have the right and the duty to defend the "insured" against a "claim" to which this Insurance applies. The Insurer shall have no duty to defend the "insured" against any "claim(s)" to which this insurance does not apply. The Insurer's duty to defend ends once the Limits of Liability are exhausted or are tendered into a court of applicable jurisdiction, or once the "insured" refuses a settlement offer as provided in Paragraph E. below.

B. The Insurer will have the right to select legal counsel to represent the "insured" for the investigation, adjustment, and defense of any "claim(s)" covered under this Policy. Selection of legal counsel by the Insurer shall not be done without the consent of the "insured"; such consent shall not be unreasonably withheld. "Legal defense expense(s)" incurred prior to the selection of legal counsel by the Insurer will not be covered under this Policy, or credited against the "self-insured retention".

C. The "insured" will have the right and the duty to retain a qualified environmental consultant(s) to perform any investigation and/or remediation of any "pollution condition(s)" covered under this Policy. The "insured" must receive the written consent of the Insurer prior to the selection and retention of such consultant, except in the event of an "emergency response". Any costs incurred prior to such consent will not be covered under this Policy or credited against the "self-insured retention", except in the event of an "emergency response".

D. "Legal defense expense" reduces the Limits of Liability shown in Item 4. of the Declarations and shall be applied to the "self-insured retention".

E. The Insurer will present all settlement offers to the "insured". If the Insurer recommends a settlement which is acceptable to a claimant, exceeds any applicable "self-insured retention", is within the Limits of Liability, and does not impose any additional unreasonable burden(s) on the "insured", and the "insured" refuses to consent to such settlement offer, then the Insurer's duty to defend shall end. The "insured" shall defend such "claim" independently. The Insurer's liability shall not exceed the amount for which the "claim" could have been settled had the Insurer's recommendation been accepted, exclusive of the "self-insured retention".

## IV. COVERAGE TERRITORY

This Policy shall afford coverage for "claims" arising from "covered operations" performed worldwide, provided that any legal action is initiated and any "claim" is made within the United States, including its territories and possessions, Puerto Rico and Canada. This Policy shall not afford coverage for any risk which would otherwise be in violation of the laws of the United States including, but not limited to, economic or trade sanction laws or export control laws administered by the United States Government.

## V. DEFINITIONS

A. "Additional insured" means:

1. the person(s) or entity(ies) specifically endorsed onto this Policy as an "additional insured(s)", if any. Such "additional insured(s)" shall maintain only those rights under this Policy as are specified by endorsement; and

2. all clients of the "named insured(s)", but only when required by written contract or agreement and solely with respect to the "covered operations" performed by or on behalf of the "named insured(s)" for that client. However, such clients are covered solely with respect to "loss" arising from "covered operations" and are not covered for any "loss" arising from the clients' own liability.

B. "Bodily injury" means physical injury, sickness, illness, disease, mental anguish, emotional distress, or shock, sustained by any person, including death resulting therefrom.

C. "Claim" means the assertion of a legal right, including but not limited to suits or other actions, alleging responsibility or liability on the part of the "insured" for "loss" arising out of "pollution conditions" to which this insurance applies.

D. "Covered operations" means those operations performed by or on behalf of the "named insured(s)" specifically listed in Item 8. of the Declarations.

E. "Emergency response" means actions taken, and reasonable "remediation costs" incurred by the "insured" to abate and/or respond to an imminent and substantial threat to human health or the environment arising from a "pollution condition" resulting from "covered operations".

F. "Extended reporting period" means the additional period of time in which to report a "claim(s)" first made against the "insured" subsequent to the end of the "policy period", arising from a "pollution condition(s)" resulting from "covered operations" to which this insurance applies. Such "covered operations" must commence subsequent to any applicable Retroactive Date, and before the end of the "policy period".

G. "First named insured" means the person or entity as shown in Item 1. of the Declarations. The "first named insured" is the party responsible for payment of all premiums and "self-insured retention(s)". The "first named insured" will also serve as the sole agent on behalf of all "insureds" with respect to the provision and receipt of notice(s), including notice of cancellation or non-renewal, receipt and acceptance of any endorsement(s) or any other change(s) to this Policy, return of any premium, assignment of any interest(s) under this Policy, as well as the exercise of any applicable "extended reporting period", unless any such responsibilities are otherwise designated by endorsement.

H. "Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents, or byproducts produced or released by "fungi".

I. "Insured" means the "first named insured," any "named Insured(s)", any "additional insured(s)", and any past or present director, officer, partner or employee of any "insured" while acting within the scope of his or her duties as such. "Insured" also means any "named insured" with regard to its participation in a joint venture, but solely with respect to the "named insured's" liability arising from its performance of "covered operations" under the joint venture.

J. "Insured contract" means that part of any contract or agreement pertaining to "covered operations" whereby the "named insured(s)" assumes the liability of another party to pay for "bodily injury", "property damage" or "remediation costs" to a third party or organization.

K. "Legal defense expense" means reasonable legal costs, charges and expenses, including expert charges, incurred by the "insured" in the investigation, adjustment, or defense of "claims" or suits.

L. "Loss" means "bodily injury", "property damage", or "remediation costs" and related "legal defense expense".

M. "Low level radioactive waste" means waste that is radioactive but not classified as the following: high-level waste (spent nuclear fuel or the highly radioactive waste produced if spent fuel is reprocessed), uranium milling residues, and waste with greater than specified quantities of elements heavier than uranium.

N. "Mixed waste" means waste containing both radioactive and hazardous components as defined under United States law by the Atomic Energy Act and the Resource Conservation and Recovery Act as may be amended.

O. "Named insured" means the "first named insured" and any person(s) or entity(ies) specifically endorsed onto this Policy as a "named insured(s)", if any. Such "named insured(s)" shall maintain the same rights under this Policy as the "first named insured" unless otherwise specified by endorsement.

P. "Natural resource damage" means injury to, destruction of, or loss of, including the resulting loss of value of fish, wildlife, biota, land, air, water, groundwater, drinking water supplies, and other such resources belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the United States (including the resources of the fishery conservation zone established by the Magnuson-Stevens Fishery Conservation and Management Act (16 U.S.C. § 1801 et. seq.)), any state or local government, any foreign government, or any Indian Tribe, or, if such resources are subject to a trust restriction on alienation, any members of any Indian Tribe, including the reasonable costs of assessing such injury, destruction or loss resulting therefrom.

Q. "Non-owned disposal site" means a site not owned or operated by the "insured" and in which the "insured" maintains no ownership interest, which receives or has received the "insured's" waste.

R. "Policy period" means the period shown in Item 2. of the Declarations, or any shorter period resulting from the cancellation of this Policy.

S. "Pollution condition" means the discharge, dispersal, release, escape, migration, or seepage of any solid, liquid, gaseous or thermal irritant, contaminant, or pollutant, including smoke, soot, vapors, fumes, acids, alkalis, chemicals, "fungi", hazardous substances, hazardous materials, or waste materials, on, in, into, or upon land and structures thereupon, the atmosphere, surface water or groundwater. For the purpose of this definition, waste materials includes, but is not limited to, "low level radioactive waste" and "mixed waste".

T. "Property damage" means any of the following which arise from the performance of "covered operations":

1. Physical injury to, or destruction of, tangible property owned by third parties, including all resulting loss of use of that property;

2. Loss of use of tangible property owned by third parties, that is not physically injured or destroyed;

3. Diminished value of property owned by third parties; and

4. "Natural resource damages".

U. "Remediation costs" means reasonable expenses incurred to investigate, quantify, monitor, mitigate, abate, remove, dispose, treat, neutralize, or immobilize "pollution conditions" to the extent required by applicable law. "Remediation costs" shall also include:

1. Reasonable legal cost, where such cost has been incurred by an "insured" with the prior written consent of the Insurer; and

2. Reasonable expenses required to restore, repair or replace personal property, owned by third parties, to substantially the same condition it was in prior to being damaged during the course of responding to a "pollution condition(s)".

**V.** "Responsible insured" means any employee of an "insured" responsible for environmental affairs, control, or compliance of a "covered operation", and any officer, director, or partner of an "Insured".

**W.** "Self-insured retention" means the dollar amount shown in Item **5.** of the Declarations or as otherwise designated by endorsement, if any.

**X.** "Terrorism" means activities against persons, organizations or property of.any nature:

    **1.** That involve the following or preparation for the following:

        **a.** Use or threat of force or violence; or

        **b.** Commission or threat of a dangerous act; or

        **c.** Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

    **2.** When one or both of the following applies:

        **a.** The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

        **b.** It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

**Y.** "War" means war, whether or not declared, civil war, martial law, insurrection, revolution, invasion, bombardment or any use of military force, usurped power or confiscation, nationalization or damage of property by any government, military or other authority.

## VI. EXCLUSIONS

This insurance does not apply to "loss" arising out of or related to:

**A.** Asbestos

The presence or dispersal of asbestos or asbestos containing materials. This exclusion shall not apply to the following:

    **1.** Asbestos abatement operations performed on behalf of the "named insured(s)" by a certified and insured asbestos abatement subcontractor;

    **2.** The inadvertent disturbance of asbestos or asbestos containing materials by or on behalf of the "named insured(s)" during the course of performing "covered operations".

**B.** Contractual Liability

Any liability of others assumed by the "insured" through contract or agreement. This exclusion does not apply to liability:

    **1.** That the "insured" would have in the absence of such contract or agreement;

    **2.** Assumed in an "insured contract", provided that the "claim(s)" or "pollution condition(s)" occurs subsequent to the execution of the contract or agreement;

    **3.** Arising from "covered operations" performed by subcontractors of the "named insured(s)", provided such liability is assumed by the "named insured(s)" in a written contract or agreement with its indemnitee for such "covered operations" and the "claims(s)" or "pollution condition(s)" occurs subsequent to the execution of the contract or agreement.

**C.** Employer's Liability

"Bodily injury" to:

    **1.** An "insured" or an employee of its parent, subsidiary or affiliate:

        **a.** Arising out of and in the course of employment by any "insured" or its parent, subsidiary or affiliate; or

        **b.** Performing duties related to the conduct of the "insured's" business.

    **2.** The spouse, child, parent, brother or sister of such "insured" or employee of its parent, subsidiary or affiliate as a consequence of Paragraph **1.** above.

This exclusion applies:

1. Whether the "insured" may be liable as an employer or in any other capacity; and

2. To any obligation to share damages with or repay someone else who must pay damages because of such "bodily injury".

This exclusion does not apply to liability assumed by the "named insured(s)" under an "insured contract".

D. Fines and Penalties

Payment of fines, penalties, punitive, exemplary or multiplied damages based upon or arising out of any "insured's" knowing, willful or deliberate noncompliance with any statute, regulation, ordinance or administrative complaint. This exclusion also applies to any legal costs associated with such fines and penalties. This exclusion will not apply to coverage for punitive damages where such coverage is allowable by law.

E. Insured's Internal Expenses

Expenses incurred by an "insured" for services performed by the salaried staff and any employees of the "insured".

F. Intentional Acts

Any acts of the "insured" which are based upon or otherwise attributed to the "insured's" dishonest, intentional, fraudulent, malicious, deliberate or knowingly wrongful act or non-compliance with any statute, regulation, ordinance, administrative complaint, notice of violation, notice letter, executive order, or instruction of any governmental agency or body. This exclusion shall not apply to any "insured" that did not personally acquiesce in or remain passive after having personal knowledge of one or more of the acts described above.

G. Known Conditions

"Pollution conditions" in existence prior to the "policy period" caused by "covered operations" performed by or on behalf of the "named insured(s)", or arising out of any resumption, change or continuation of such "pollution conditions", if any "responsible insured" knew or reasonably could have foreseen prior to the "policy period" that such "pollution conditions" could give rise to a "claim".

H. Non-Owned Disposal Sites (NODS)

"Pollution conditions" on, at, or migrating from a "non-owned disposal site". This exclusion shall not apply to any "non-owned disposal site" listed on the Schedule of Non-Owned Disposal Sites Endorsement, if any.

I. Products Liability

Any goods or products manufactured, sold, or distributed by the "insured".

J. Professional Liability

The "insured's" rendering of or failure to render professional services, including, but not limited to, recommendations, opinions, and strategies rendered for architectural, consulting, design and engineering work, such as drawings, designs, maps, reports, surveys, change orders, plan specifications, assessment work, remedy selection, site maintenance, equipment selection, and related construction management, supervisory, inspection or engineering services. This exclusion shall not apply to "pollution conditions" that arise as a result of "covered operations" performed by or on behalf of the "named insured(s)".

K. Vehicles

"Pollution conditions" resulting from the use, maintenance or operation of an automobile, aircraft, watercraft or other conveyance. This exclusion shall not apply to the use of an automobile, aircraft, watercraft or other conveyance reasonably related to the "covered operations" of the "insured", including loading and unloading, within the boundaries of the locations where "covered operations" are being performed.

L. War or Terrorism

"Pollution conditions" attributable, whether directly or indirectly, to any acts that involve, or that involve preparation for, "war" or "terrorism" regardless of any other cause or event that contributes concurrently or in any sequence to the injury or damage.

M. Workers' Compensation

The Jones Act or any workers' compensation, unemployment compensation, or disability benefits law or related laws.

## VII. REPORTING AND COOPERATION

A. The "insured" must see to it that the Insurer receives written notice of any "claim" or "pollution condition", as soon as practical, at the address specified in Item 7.a. of the Declarations. Notice should include reasonably detailed information as to:

1. The identity of the "insured", including contact information for an appropriate person to contact regarding the handling of the "claim" or "pollution condition";

2. A description of the "covered operations";

3. The location of the "pollution condition";

4. The nature of the "claim" or "pollution condition"; and

5. Any steps undertaken by the "insured" to respond to the "claim" or "pollution condition".

In the event of a "pollution condition", the "insured" must also take all reasonable measures to provide immediate verbal notice to the Insurer.

B. The "insured" must:

1. Immediately send the Insurer copies of any demands, notices, summonses or legal papers received in connection with any "claim";

2. Authorize the Insurer to obtain records and other information;

3. Cooperate with the Insurer in the investigation, settlement or defense of the "claim";

4. Assist the Insurer, upon the Insurer's request, in the enforcement of any right against any person or organization which may be liable to the "insured" because of injury or damage to which this Policy may also apply; and

5. Provide the Insurer with such information and cooperation as it may reasonably require.

C. No "insured(s)" shall make or authorize an admission of liability or attempt to settle or otherwise dispose of any "claim" without the written consent of the Insurer. Nor shall any "insured(s)" retain any consultants or legal counsel, or incur any "legal defense expense" or "remediation costs" without the prior written consent of the Insurer, except in the event of an "emergency response".

Upon the discovery of a "pollution condition", the "insured" shall make every attempt to mitigate any "loss" and comply with applicable laws. The Insurer shall have the right, but not the duty, to mitigate such "pollution conditions" if, in the sole judgment of the Insurer, the "insured" fails to take reasonable steps to do so. In that event, any "remediation costs" incurred by the Insurer shall be deemed incurred by the "insured", and shall be subject to the "self-insured retention" and Limits of Liability listed in the Declarations.

## VIII. EXTENDED REPORTING PERIOD

A. The "first named insured" shall be entitled to a basic "extended reporting period", and may purchase an optional supplemental "extended reporting period", following cancellation, as described in Paragraph A.1. of Section IX. General Conditions, or nonrenewal.

B. "Extended reporting periods" shall not reinstate or increase any of the Limits of Liability. "Extended reporting periods" shall not extend the "policy period" or change the scope of coverage provided. A "claim" first made against an "insured" and reported to the Insurer within the basic "extended reporting period" or supplemental "extended reporting period", whichever is applicable, will be deemed to have been made on the last day of the "policy period".

C. Provided the "first named insured" has not purchased any other insurance to replace this insurance, the "first named insured" shall have a sixty (60) day basic "extended reporting period" without additional charge.

Case 5:14-cv-00240-F   Document 3-2   Filed 04/23/14   Page 23 of 59

Complaint Exhibit A
P. 8

D. The "first named insured" shall be entitled to purchase a supplemental "extended reporting period" of up to thirty-four (34) months for not more than 200% of the full policy premium shown in Item 6. of the Declarations. Such supplemental "extended reporting period" starts when the basic "extended reporting period" ends. The Insurer will issue an endorsement providing a supplemental "extended reporting period" provided that the "first named insured":

1. Makes a written request, to the address shown in Item 7.b. of the Declarations, for such endorsement which the Insurer receives within the sixty (60) days following the expiration of the "policy period"; and

2. Pays the additional Premium when due. If that additional Premium is paid when due, the supplemental "extended reporting period" may not be cancelled, provided that all other terms and conditions of the Policy are met.

## IX. GENERAL CONDITIONS

A. Cancellation

1. This Policy may be cancelled only by the "first named insured", or through the "first named insured's" agent, by mailing to the Insurer, at the address listed in Item 7.b. of the Declarations, written notice stating when such cancellation shall be effective. In the event of cancellation by the "first named insured", the minimum earned premium percentage indicated on the Declarations shall apply as of the date coverage is bound.

2. This Policy may be cancelled by the Insurer for the following reasons:

   a. Non-payment of premium;

   b. Fraud or material misrepresentation on the part of any "insured", such as can be proven in a court of law;

   c. Material change in the "covered operations" from the description identified in the Application to this Policy and supporting materials which results in a materially increased likelihood of "claims" or "pollution conditions";

   by mailing to the "first named insured" at the "first named insured's" last known address, written notice stating when, not less than sixty (60) days thereafter, fifteen (15) days if cancellation is for non-payment of any unpaid portion of the premium, such cancellation shall be effective. The mailing of notice shall be sufficient proof of notice. The effective date and hour of cancellation stated in the notice shall be the end of the "policy period".

B. Inspection and Audit

To the extent of the "insured's" ability to provide such access, and with reasonable notice to the "insured", the Insurer shall be permitted, but not obligated, to inspect the "insured's" property and/or operations. Neither the Insurer's right to make inspections, the making of said inspections, nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the "insured" or others, to determine or warrant that such property or operations are safe or in compliance with applicable laws.

The Insurer may examine and audit the "insured's" books and records during this "policy period" and extensions thereof and within three (3) years after the final termination of this Policy.

C. Legal Action Against the Insurer

No person or organization, other than an "insured", has a right under this Policy:

1. To join the Insurer as a party or otherwise bring the Insurer into a suit against any "insured"; or

2. To sue the Insurer in connection with this insurance unless all of the Policy terms have been fully complied with.

A person or organization may sue the Insurer to recover after an agreed settlement or on a final judgment against an "insured". However, the Insurer will not be liable for amounts that are not payable under the terms of this Policy or that are in excess of the applicable Limit of Liability. An agreed settlement means a settlement and release of liability signed by the Insurer, the "insured" and the claimant or the claimant's legal representative.

D. Bankruptcy

Bankruptcy or insolvency of the "insured" or of the "insured's" estate shall not relieve the Insurer of any of its obligations hereunder.

E. Subrogation

In the event of any payment under this Policy by the Insurer, the Insurer shall be subrogated to all of the "insured's" rights of recovery against any person or organization, and the "insured(s)" shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The "insured(s)" shall do nothing to prejudice such rights. Any recovery as a result of subrogation proceedings arising under this Policy shall accrue first to the "insured(s)" to the extent of any payments in excess of the limit of coverage; then to the Insurer to the extent of its payment under the Policy; and then to the "insured(s)" to the extent of the "self-insured retention." Expenses incurred in such subrogation proceedings shall be apportioned among the interested parties in the recovery in the proportion that each interested party's share in the recovery bears to the total recovery.

F. Representations

By accepting this Policy, the "first named insured" agrees that:

1. The statements in the Declarations, Schedules, and Application for this Policy are accurate and complete;

2. Those statements are based upon representations the "first named insured" made to the Insurer; and

3. This Policy has been issued in reliance upon the "first named insured's" representations.

G. Separation of Insureds

Except with respect to the Limits of Liability, Cancellation Conditions **2.a.** and **2.b.**, and any obligations specifically assigned to the "first named insured", this Policy applies:

1. As if each "insured" were the only "insured";

2. Separately to each "insured" against whom a "claim" is made.

H. Other Insurance

If other valid and collectible insurance is available to the "insured(s)" covering a "loss" also covered by this Policy, other than a policy that is specifically written to apply in excess of this Policy, the insurance afforded by this Policy shall apply in excess of and shall not contribute with such other insurance.

I. Jurisdiction and Venue

It is agreed that in the event of the failure of the Insurer to pay any amount claimed to be due hereunder, the Insurer and the "insured" will submit to the jurisdiction of the State of New York and will comply with all requirements necessary to give such court jurisdiction. Nothing in this clause constitutes or should be understood to constitute a waiver of the Insurer's right to remove an action to a United States District Court.

J. Choice of Law

All matters arising hereunder including questions relating to the validity, interpretation, performance, and enforcement of this Policy shall be determined in accordance with the law and practices of the State of New York.

K. Changes and Assignment

Notice to or knowledge possessed by any person shall not effect waiver or change in any part of this Policy or stop the Insurer from asserting any right under the terms of this Policy. The terms, definitions, conditions, exclusions and limitations of this Policy shall not be waived or changed, and no assignment of any interest under this Policy shall bind the Insurer, except as provided by endorsement and attached to this Policy.

L. Headings

The descriptions in the headings and sub-headings of this Policy are inserted solely for convenience and do not constitute any part of the terms or conditions hereof.

M. Consent

Where the consent of the Insurer, or an "insured", is required under this Policy, such consent shall not be unreasonably withheld, delayed, conditioned, or denied.

# CPLC II AUTOMOBILE ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **Bragg Communities, LLC** | | | **001** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **CPM** | **G23899048 002** | **04/01/2010 - 04/01/2013** | **04/01/2010** |
| Issued By (Name of Insurance Company) | | | |
| **Illinois Union Insurance Company** | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the insurer hereby agree to the following Policy change(s):

Section VI., Exclusions, Subsection K., Vehicles, is hereby deleted in its entirety and replaced with the following:

Vehicles

"Pollution conditions" resulting from the use, maintenance or operation of an automobile, aircraft, watercraft, or other conveyance. This exclusion shall not apply to the use of vehicles reasonably related to the "covered operations" of the "insured" including loading and unloading within the boundaries of the locations where "covered operations" are being performed or during the course of transportation via automobile by or on behalf of the "named insured" to or from locations where "covered operations" are being performed.

All other terms and conditions of the policy remain unchanged.

_____
Authorized Representative

PF-22129 (4/2007)　　　　　　　　© 2007 ♿　　　　　　　　Page 1 of 1

# EXTERIOR INSULATION AND FINISH SYSTEM (EIFS)
## EXCLUSION ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| Bragg Communities, LLC | | | 002 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| CPM | G23899048 002 | 04/01/2010 - 04/01/2013 | 04/01/2010 |

| Issued By (Name of Insurance Company) |
|---|
| Illinois Union Insurance Company |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree to the following Policy change(s):

I.  Section VI., Exclusions, is hereby amended by the addition of the following exclusion:

Exterior Insulation and Finish System (EIFS)

The design, manufacture, construction, fabrication, preparation, installation, application, maintenance or repair, including remodeling, service, correction, or replacement of an "exterior insulation and finish system (EIFS)", synthetic stucco, or any similar product or any part thereof, including the application or use of paints, conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such a product.

II.  Section V., Definitions, is hereby amended by the addition of the following definition:

"Exterior Insulation and finish system (EIFS)" means synthetic stucco or any other exterior insulation and finish system used on any part of any building or structure and consisting of:

1.  A rigid or semi-rigid insulation board made of expanded polystyrene or other materials;

2.  The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;

3.  A reinforced base coat; and

4.  A finish coat providing surface texture and color.

All other terms and conditions of the policy remain unchanged.

_____
Authorized Representative

Complaint Exhibit A
P. 12

# FUNGI EXCLUSION ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **Bragg Communities, LLC** | | | **003** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **CPM** | **G23899048 002** | **04/01/2010 – 04/01/2013** | **04/01/2010** |
| Issued By (Name of Insurance Company) | | | |
| **Illinois Union Insurance Company** | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree to the following Policy change(s):

I.   The definition of "pollution conditions" is deleted in its entirety and replaced by the following:

"Pollution condition" means the discharge, dispersal, release, escape, migration, or seepage of any solid, liquid, gaseous or thermal irritant, contaminant or pollutant, including smoke, soot, vapors, fumes, acids, alkalis, chemicals, hazardous substances, hazardous materials, or waste materials, on, in, into, or upon land and structures thereupon, the atmosphere, surface water or groundwater.  For the purpose of this definition, waste materials includes, but is not limited to "low level radioactive waste" and "mixed waste".

II.  Section VI., Exclusions, is hereby amended by the addition of the following exclusion:

Fungi

The actual, alleged, or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi", regardless of whether any other cause, event, material, or product contributed concurrently or in any sequence to such injury or damage.

This exclusion shall also apply to any costs or expense arising out of the testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, or disposing of, or in any way responding to or assessing the effects of, "fungi", by any "insured" or by any other person or entity.

All other terms and conditions of the policy remain unchanged.

_____
                                    Authorized Agent

# NOTICE OF CANCELLATION - 90 DAYS
# ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **Bragg Communities, LLC** | | | **004** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **CPM** | **G23899048 002** | **04/01/2010 - 04/01/2013** | **04/01/2010** |
| Issued By (Name of Insurance Company) | | | |
| **Illinois Union Insurance Company** | | | |

## THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree to the following Policy change(s):

Section VIII., General Conditions, Subsection **A. 2.**, Cancellation is hereby deleted in its entirety and replaced with the following:

2.  This Policy may be cancelled by the Insurer for the following reasons:

    a.  Non-payment of Premium;

    b.  Fraud or material misrepresentation on the part of any "insured" such as can be proven in a court of law;

    c.  Material change in the "covered operations" from the description identified in the Application to this policy and supporting materials which results in a materially increased likelihood of "claims" or "pollution conditions",

    by mailing to the "first named insured" at the "first named insured's" last known address, written notice stating when not less than ninety (90) days thereafter, fifteen (15) days if cancellation is for non-payment of any unpaid portion of the premium such cancellation shall be effective. The mailing of notice shall be sufficient proof of notice. The effective date and hour of cancellation stated in the notice shall be the end of the "policy period".

All other terms and conditions of the policy remain unchanged.

_____
Authorized Representative

# PRIMARY INSURANCE ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **Bragg Communities, LLC** | | | **005** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **CPM** | **G23899048 002** | **04/01/2010 - 04/01/2013** | **04/01/2010** |
| Issued By (Name of Insurance Company) | | | |
| **Illinois Union Insurance Company** | | | |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the insurer hereby agree to the following Policy change(s):

Section VIII., General Conditions, Subsection H., Other Insurance, is hereby deleted in its entirety and replaced with the following:

Other Insurance

If other valid and collectible insurance is available to the "insured" covering a "loss" also covered by this policy, this insurance shall apply as primary to such insurance.

All other terms and conditions of the policy remain unchanged.

_____
Authorized Agent

# OCIP ENDORSEMENT

| Named Insured | | | | Endorsement Number |
|---|---|---|---|---|
| Bragg Communities, LLC | | | | 006 |
| Policy Symbol | Policy Number | Policy Period | | Effective Date of Endorsement |
| CPM | G23899048 002 | 04/01/2010 - 04/01/2013 | | 04/01/2010 |
| Issued By (Name of Insurance Company) | | | | |
| Illinois Union Insurance Company | | | | |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer agree to the following Policy change(s):

I.   Section VI., Exclusions, is hereby amended by the addition of the following:

      Named Insured vs. Named Insured

      "Claims" made by a "named insured" against any other "named insured". However, this exclusion will not apply to "claims" asserted by Bragg Communities, LLC.

II.  The following Prime Contractors or entities listed below shall be considered additional "named insured(s)" under this Policy, but only with respect to liability arising out of the "covered operations" shown in the Declarations of the Policy, or any other "covered operations" added to the Policy by endorsement.

     Additional "Named Insured(s)"

- Bragg-Picerne Partners, LLC
- Picerne Construction /FBG, LLC
- Picerne Management/FBG, LLC
- Picerne-Military Housing, LLC ("PMH")
- United States of America, Department of the Army
- GMACCH Capital Corp. (lender)

     For trade subcontractors not specifically identified above, additional "named insured" status is granted only when there is a recognized written and executed contract agreement with the Prime Contractor(s) in support of the "covered operations" identified on the Declarations to this Policy.

III. Section **V.**, Definitions, Subsection **T.**, "Property damage" is hereby deleted in its entirety and replaced with the following:

     "Property damage" means any of the following which arise from the performance of "covered operations":

1.  Physical injury to, or destruction of, tangible property owned by third parties, including all resulting loss of use of that property;

2.  Loss of use of tangible property owned by third parties, that is not physically injured or destroyed;

3.  Diminished value of property owned by third parties; and

4.  "Natural resource damages"

5. Physical injury to a real property owned by the "first named insured" identified in Item **1.** of the Declarations, where such damage:

   a) arises from the performance of "covered operations" performed on behalf of the "first named insured" identified in Item **1.** of the Declarations during the "policy period", and

   b) results in damage to such real property that it is the subject of the "covered operations" performed during the "policy period"

All other terms and conditions of the policy remain unchanged.

_____
Authorized Agent

_____
Authorized Agent

# COVERAGE TERRITORY AMENDATORY (United States Claims Only) ENDORSEMENT (CPL)

| Named Insured | Endorsement Number |
|---|---|
| **Bragg Communities, LLC** | 007 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| CPM | G23899048 002 | 04/01/2010 - 04/01/2013 | 04/01/2010 |

| Issued By (Name of Insurance Company) |
|---|
| **Illinois Union Insurance Company** |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer agree to the following changes to this Policy:

Section IV., **COVERAGE TERRITORY**, of this Policy is deleted in its entirety and replaced with the following:

### III. COVERAGE TERRITORY

This Policy shall afford coverage for "claims" arising out of "covered operations" performed worldwide, provided that any legal action is initiated and any "claim" is made within the United States of America.

Notwithstanding, this Policy shall not afford coverage for any risk which would otherwise be in violation of the laws of the United States America, including, but not limited to, economic or trade sanction laws or export control laws administered by the United States Government.

---

PF-27906 (08/09) Ptd. in U.S.A.     © 2009 Ⓒ

Authorized Representative

Page 1 of 1

## NON-OWNED DISPOSAL SITES COVERAGE (Blanket) with SUBLIMIT
## ENDORSEMENT (CPLC II)

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **Bragg Communities, LLC** | | | **008** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **CPM** | **G23899048 002** | **04/01/2010 - 04/01/2013** | **04/01/2010** |
| Issued By (Name of Insurance Company) | | | |
| **Illinois Union Insurance Company** | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the insurer agree to the following changes to this Policy:

I. Section V., DEFINITIONS, Subsections D. and Q., of this Policy are deleted in its entirety and replaced with the following:

 D. **"Covered operations"** means those operations performed by or on behalf of a "named insured" specifically identified in Item 8. of the Declarations, including any attendant coordination, facilitation or effectuation of the disposal and/or recycling of waste materials generated from such operations at a "non-owned disposal site".

 Q. **"Non-Owned Disposal Site"** means a site located within the United States of America that has not at any time been owned or operated, in whole or in part, by any "insured" or has received waste resulting from "covered operations", provided that the "non-owned disposal site":

 1. Was properly licensed by federal and/or state regulators with applicable jurisdiction to accept the wastes at the time of such disposal;

 2. Was not owned or operated by any person, corporation or unincorporated association that was in bankruptcy at the time the waste was received for disposal;

 3. Has not, at any time prior to the inception date of this Policy, been identified on the United States EPA (CERCLA) National Priorities List or CERCLIS list, or pursuant to any functional equivalent of those listings made by a state regulatory agency pursuant to state law; and

 4. Was not undergoing voluntary or regulatory-required remediation activities at the time the waste was received for disposal.

II. Section VI., EXCLUSIONS, Subsection H., Non-Owned Disposal Sites, of this Policy is deleted in its entirety.

III. $2,000,000 shall be the Aggregate Sublimit of Liability for the coverage afforded pursuant to this Endorsement. Therefore, this Aggregate Sublimit of Liability shall be the maximum amount the Insurer shall pay for all "claims" for "loss" arising out of the disposal and/or recycling of waste materials generated from "covered operations" at a "non-owned disposal site". This Aggregated Sublimit of Liability shall be subject to any and all applicable Aggregate Limits of Liability identified in the Declarations to this Policy. Under no circumstances shall the Insurer be liable to pay any amount in excess of any applicable Aggregate Limit of Liability.

All other terms and conditions of this Policy remain unchanged.

# SCHEDULE OF ADDITIONAL INSUREDS ENDORSEMENT (CPL CM)

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **Bragg Communities, LLC** | | | **009** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **CPM** | **G23899048 002** | **04/01/2010 – 04/01/2013** | **04/01/2010** |
| Issued By (Name of Insurance Company) | | | |
| **Illinois Union Insurance Company** | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree to the following changes to this Policy:

I.  The entities identified below are "additional insureds" pursuant to this Policy, but only with respect to their liability for "loss" or "emergency response costs" arising out of "pollution conditions" resulting from "covered operations" or "transportation" to which this insurance applies.

### Schedule of Additional Insureds

1.  Harnett County, NC ✓

2.

3.

4.

II. Solely with respect to the "additional insureds" identified above, no "loss" or "emergency response costs" may be reported to the Insurer pursuant to Section **VII., REPORTING AND COOPERATION,** of this Policy. All "loss" or "emergency response costs" must be reported to the Insurer by the "first named insured" or any "named insureds" pursuant to this Policy.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

PF-29283 (04/10)                                    © 2010                                    Page 1 of 1

**Complaint Exhibit A
P. 20**

# TRADE OR ECONOMIC SANCTIONS ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **Bragg Communities, LLC** | | | **010** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **CPM** | **G23899048 002** | **04/01/2010 - 04/01/2013** | **04/01/2010** |
| Issued By (Name of Insurance Company) | | | |
| **Illinois Union Insurance Company** | | | |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This insurance does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance, including, but not limited to, the payment of claims. All other terms and conditions of the policy remain unchanged.

Authorized Agent

ALL-21101 (11/06) Ptd. in U.S.A.

Page 1 of 1

# SERVICE OF SUIT ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **Bragg Communities, LLC** | | | **011** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **CPM** | **G23899048 002** | **04/01/2010 - 04/01/2013** | **04/01/2010** |
| Issued By (Name of Insurance Company) | | | |
| **Illinois Union Insurance Company** | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

Information about service of suits upon the company is given below. Service of process of suits against the company may be made upon the following person, or another person the company may designate:

> Saverio Rocca, Assistant General Counsel
> ACE USA Companies
> 436 Walnut Street
> Philadelphia, PA 19106-3703

The person named above is authorized and directed to accept service of process on the company's behalf in any action, suit or proceeding instituted against the company. If the insured requests, the company will give the insured a written promise that a general appearance will be entered on the company's behalf if a suit is brought.

If the insured requests, the company will submit to the jurisdiction of any court of competent jurisdiction. The company will accept the final decision of that court or any Appellate Court in the event of an appeal.

The law of some jurisdictions of the United States of America require that the Superintendent, Commissioner or Director of Insurance (or their successor in office) be designated as the company's agent for service of process. In these jurisdictions, the company designates the Director of Insurance as the company's true and lawful attorney upon whom service of process on the company's behalf may be made. The company also authorizes the Director of Insurance to mail process received on the company's behalf to the company person named above.

If the insured is a resident of Canada, the insured may also serve suit upon the company by serving the government official designated by the law of the insured's province.

NOTHING HEREIN CONTAINED SHALL BE HELD TO VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, CONDITIONS, OR LIMITATIONS OF THE POLICY TO WHICH THIS ENDORSEMENT IS ATTACHED OTHER THAN AS ABOVE STATED.

_____
Authorized Representative

XS-3U96f (02/06) (Legal language)

# SIGNATURE ENDORSEMENT

| Named Insured | | | |
|---|---|---|---|
| **Bragg Communities, LLC** | | | Endorsement Number **012** |
| Policy Symbol **CPM** | Policy Number **G23899048 002** | Policy Period **04/01/2010 - 04/01/2013** | Effective Date of Endorsement **04/01/2010** |
| Issued By (Name of Insurance Company) **Illinois Union Insurance Company** | | | |

THE ONLY SIGNATURES APPLICABLE TO THIS POLICY ARE THOSE REPRESENTING THE COMPANY NAMED ON THE FIRST PAGE OF THE DECLARATIONS.

By signing and delivering the policy to you, we state that it is a valid contract when countersigned by our authorized representative.

### ILLINOIS UNION INSURANCE COMPANY
525 W. Monroe Street, Suite 400, Chicago, Illinois 60661

GEORGE D. MULLIGAN, Secretary          JOHN J. LUPICA, President

### WESTCHESTER SURPLUS LINES INSURANCE COMPANY
500 Colonial Center Parkway, Suite 200, Roswell, GA 30076

GEORGE D. MULLIGAN, Secretary          DENNIS A. CROSBY, JR., President

_____
Authorized Agent

LD-5S23g (02/05) Ptd. in U.S.A.



ACE USA
☒ Illinois Union Insurance Company
☐ Westchester Surplus Lines Insurance Company
☐ _____

Insured:
Bragg Communities, LLC
1405 South County Trail
Suite 530
East Greenwich, RI 02818

Attached To Policy No.: CPM G23899048 002

Effective Date: 04/01/2010

---

### RHODE ISLAND SURPLUS LINES NOTIFICATION

**THIS INSURANCE CONTRACT HAS BEEN PLACED WITH AN INSURER NOT LICENSED TO DO BUSINESS IN THE STATE OF RHODE ISLAND BUT APPROVED AS A SURPLUS LINES INSURER. THE INSURER IS NOT A MEMBER OF THE RHODE ISLAND INSURERS INSOLVENCY FUND. SHOULD THE INSURER BECOME INSOLVENT, THE PROTECTION AND BENEFITS OF THE RHODE ISLAND INSURANCE INSOLVENCY FUND ARE NOT AVAILABLE.**

NOTHING HEREIN CONTAINED SHALL BE HELD TO VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, CONDITIONS, OR LIMITATIONS OF THE POLICY TO WHICH THIS NOTICE IS ATTACHED OTHER THAN AS STATED ABOVE.

SL-24696 (Ed. 03/08)

Page 1 of 1



| | Illinois Union Insurance Company |
|---|---|
| | Insurance Company |
| | **Bragg Communities, LLC** |
| | Policyholder |
| | CPM G23899048 002 |
| | Policy Number |
| | USI Insurance Services Of Massachusetts Inc |
| | Broker/Producer |

## POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM INSURANCE COVERAGE

You were notified that under the Terrorism Risk Insurance Act, as amended, that you have the right to purchase insurance coverage for losses resulting from acts of terrorism, *as defined in Section 102(1) of the Act*. The term "act of terrorism" means any act that is certified by the Secretary of the Treasury—in concurrence with the Secretary of State, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, SUCH POLICIES MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 85% OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABIITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, COVERAGE MAY BE REDUCED.

You elected *NOT* to purchase terrorism coverage under the Act at the price indicated. ACCORDINGLY, WE WILL *NOT* PROVIDE THIS COVERAGE AND YOU DO NOT OWE THE ADDITIONAL PREMIUM FOR THAT COVERAGE INDICATED BELOW.

Terrorism coverage described by the Act under your policy was made available to you for additional premium in the amount of $1,644, however you elected to decline such coverage.

TRIA15c (01/08)

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.



**ACE Producer Compensation
Practices & Policies**

ACE believes that policyholders should have access to information about ACE's practices and policies related to the payment of compensation to brokers and independent agents. You can obtain that information by accessing our website at http://www.aceproducercompensation.com or by calling the following toll-free telephone number: 1-866-512-2862.

ALL-20887 (10/06)



**NCDENR**

North Carolina Department of Environment and Natural Resources
Division of Water Quality
Charles Wakild, P.E.
Director

Beverly Eaves Perdue
Governor

Dee Freeman
Secretary

August 24, 2012

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**
7009 3410 0001 6831 9116

C. William Brewer
Bragg Communities LLC
Picerne Military Housing
903 Armistead Street
Fort Bragg, NC 28307

Subject: **NOTICE OF VIOLATION & INTENT TO ENFORCE (NOV-2012-DV-0164)**
Permit No. WQCS00359
Bragg Communities LLC
Fort Bragg North Training Area-Linden Oaks
Harnett County

Dear Mr. Brewer:

A review has been conducted of the Fort Bragg North Training Area's self-reported Sanitary Sewer Overflows (SSO's) 5-Day Report(s) submitted by Picerne Military Housing and Harnett County Public Utilities. This review has shown the subject facility to be in violation of the requirements found in Collection System Permit WQCS00359 and/or G.S. 143-215.1(a)(1). The violation(s) that occurred are summarized below.

| Date of SSO | Location | Cause | Total Volume of Spill | Volume Reaching Surface Waters |
|---|---|---|---|---|
| 07/12/2012 | 3 Brave Trail, Linden Oaks | Pipe Failure | 37999 gallons | 37999 gallons |

Remedial actions should be taken to correct this non-compliance problem. This office requests that you respond to this Notice, in writing, within 10 calendar days of its receipt. In your response, you should

225 Green St., Suite 714, Fayetteville, NC 28301-5043
Phone: 910-433-3300 \ FAX: 910-486-0707 \ Customer Service: 1-877-623-6748
Internet: www.ncwaterquality.org

An Equal Opportunity \ Affirmative Action Employer

One
NorthCarolina
*Naturally*

**EXHIBIT**
tabbies
B

address the causes of non-compliance, remedial actions, and all other actions taken to prevent the recurrence of similar situations.

This office is considering sending recommendation for enforcement to the Director of the Division of Water Quality for the incident(s) listed above. The response to this correspondence will be considered in this process. Enforcement decisions will also be based on volume spilled, volume reaching surface waters, duration and gravity, impacts to public health, fish kills or recreational area closures. Other factors considered in determining the amount of the civil penalty are the violator's history of spills, the cost of rectifying the damage, whether the spill was intentional and whether money was saved by non-compliance. If you should have any questions, please do not hesitate to contact this office at 910-433-3300.

Sincerely,

*Belinda S. Henson*

Belinda S. Henson
Regional Supervisor
Surface Water Protection Section

BSH: HW/hw

Cc:     PERCS Unit
        Fayetteville Files (HW)

225 Green St., Suite 714, Fayetteville, NC 28301-5043
Phone: 910-433-3300 \ FAX: 910-486-0707 \ Customer Service: 1-877-623-6748
Internet: www.ncwaterquality.org

An Equal Opportunity \ Affirmative Action Employer

One
NorthCarolina
*Naturally*



# RATHJE | WOODWARD LLC
### ATTORNEYS AT LAW, ESTABLISHED 1938.

WRITER'S DIRECT TELEPHONE: (630) 510-4927
WRITER'S EMAIL: cphilbrick@rathjewoodward.com

November 8, 2012

*Via Certified Mail/Return Receipt Requested and*
*Email to CasualtyRiskEnvironmentalFirstNotice@acegroup.com*
Environmental Risk Claims Manager
ACE USA Claims
P.O. Box 5103
Scranton, PA  18505-0510

Re:  Notice of Pollution Condition
ACE Policy No.: CPM G23899084 002
Policy Period:  April 1, 2010 to April 1, 2013

Dear Sir or Madam:

We write on behalf of your insureds, Bragg Communities, LLC, Picerne Construction/FBG, LLC and Picerne-Military Housing, LLC to provide you with notice of a pollution condition under the above referenced policy.  The contact person for the insureds is Ron Phillips.  His address and telephone are:

Ron Phillips, Regional Vice President of Construction
Picerne-Military Housing, LLC
903 Armistead St.
Fort Bragg, NC 28307
(910)764-4500

Loss Location:  As part of the operation and maintenance of the on-site water distribution and wastewater collection system at the Linden Oaks housing area, Fort Bragg (designated on the policy as the Covered Operations) and specifically at 3 Brave Trail, Linden Oaks, there was sewer pipe failure on July 12, 2012 that caused approximately 37,999 gallons of sanitary sewage to be discharged and reach local surface waters.

Your insured discovered the discharge and took immediate corrective action.  It also retained counsel to investigate the facts and circumstances of the incident.  That investigation is ongoing.  The appropriate local and regulatory authorities were also notified.  On August 24, 2012, the North Carolina Depart of Environmental and Natural Resources ("NCDENR") issued a Notice of Violation, a copy of which is enclosed.  Your insured's September 24, 2012 response to

300 EAST ROOSEVELT ROAD, SUITE 300, WHEATON, ILLINOIS 60187



EXHIBIT
*C*

ACE USA Claims
November 8, 2012
Page 2

NCDENR is also enclosed, which sets forth details concerning the discharge subsequent investigation and remediation. The immediate remediation costs were approximately $11,505.17 and the investigation, defense and implemented improvements have been approximately $46,495.76.

Your insureds request defense and indemnification as called for under the policy. At this point, NCDENR is evaluating your insureds' response. If circumstance change, we will notify you accordingly. If you need additional information, please do not hesitate to contact the undersigned or Mr. Phillips.

Yours very truly,

Charles L. Philbrick

CLP/ckc
Enclosures:     NCDENR Notice of Violation
                September 24, 2012 correspondence

cc:     William Culton, Jr., Esq.
        Mr. Ron Phillips
        Mr. Thomas Storella



**NCDENR**

North Carolina Department of Environment and Natural Resources
Division of Water Quality
Charles Wakild, P.E.
Director

Beverly Eaves Perdue
Governor

Dee Freeman
Secretary

August 24, 2012

<u>CERTIFIED MAIL</u>
<u>RETURN RECEIPT REQUESTED</u>
7009 3410 0001 6831 9116

C. William Brewer
Bragg Communities LLC
Picerne Military Housing
903 Armistead Street
Fort Bragg, NC 28307

Subject:   NOTICE OF VIOLATION & INTENT TO ENFORCE (NOV-2012-DV-0164)
           Permit No. WQCS00359
           Bragg Communities LLC
           Fort Bragg North Training Area-Linden Oaks
           Harnett County

Dear Mr. Brewer:

A review has been conducted of the Fort Bragg North Training Area's self reported Sanitary Sewer Overflows (SSO's) 5-Day Report(s) submitted by Picerne Military Housing and Harnett County Public Utilities. This review has shown the subject facility to be in violation of the requirements found in Collection System Permit WQCS00359 and/or G.S. 143-215.1(a)(1). The violation(s) that occurred are summarized below.

| Date of SSO | Location | Cause | Total Volume of Spill | Volume Reaching Surface Waters |
|-------------|----------|-------|------------------------|-------------------------------|
| 07/12/2012 | 3 Brave Trail, Linden Oaks | Pipe Failure | 37999 gallons | 37999 gallons |

Remedial actions should be taken to correct this non-compliance problem. This office requests that you respond to this Notice, in writing, within 10 calendar days of its receipt. In your response, you should

225 Green St., Suite 714, Fayetteville, NC 28301-5043
Phone: 910-433-3300 \ FAX: 910-486-0707 \ Customer Service: 1-877-623-6748
Internet: www.ncwaterquality.org

An Equal Opportunity \ Affirmative Action Employer

One
NorthCarolina
*Naturally*

address the causes of non-compliance, remedial actions, and all other actions taken to prevent the recurrence of similar situations.

This office is considering sending recommendation for enforcement to the Director of the Division of Water Quality for the incident(s) listed above. The response to this correspondence will be considered in this process. Enforcement decisions will also be based on volume spilled, volume reaching surface waters, duration and gravity, impacts to public health, fish kills or recreational area closures. Other factors considered in determining the amount of the civil penalty are the violator's history of spills, the cost of rectifying the damage, whether the spill was intentional and whether money was saved by non-compliance. If you should have any questions, please do not hesitate to contact this office at 910-433-3300.

Sincerely,

Belinda S. Henson

Belinda S. Henson
Regional Supervisor
Surface Water Protection Section

BSH: HW/hw

Cc:    PERCS Unit
       Fayetteville Files (HW)

225 Green St., Suite 714, Fayetteville, NC 28301-5043
Phone: 910-433-3300 \ FAX: 910-486-0707 \ Customer Service: 1-877-623-6748
Internet: www.ncwaterquality.org

An Equal Opportunity \ Affirmative Action Employer

One
NorthCarolina
*Naturally*



September 24, 2012

Belinda S. Henson
Regional Supervisor
Surface Water Protection Section
North Carolina Division of Water Quality
225 Green Street, Suite 714
Fayetteville, NC 28301-5403

Re: Bragg Communities Response to Notice of Violation
    Fort Bragg North Training Area – Linden Oaks, Harnett County

Dear Ms. Henson:

This letter is Bragg Communities, LLC's ("Bragg Communities") response to your Notice of Violation and Intent to Enforce ("NOV") dated August 24, 2012. Although the NOV is addressed to Bragg Communities, Harnett County has been consulted regarding this response since, as the Operator in Responsible Charge ("ORC") for the subject wastewater system, who responded to the Sanitary Sewer Overflow (SSO) and repaired the system. Please note that the NOV was addressed to William Brewer at Bragg Communities, who is no longer in that position. Any future contacts for Bragg Communities should be forwarded to me at the same address.

The Incident and Cause

Although a report was filed with DWQ at the time of the incident, we think it best to summarize what happened.

903 Armistead Street , Fort Bragg, NC 28307 • Telephone (910) 764-4500 • Fax (910) 497-4218
www.picernemilitaryhousing.com

On July 12, 2012, residents of 1, 3, 5, and 7 Brave Trail in Linden Oaks called CentraComm, who monitors emergency phone calls received after normal business hours. The first call was received at 5:46 p.m. During this time, weather conditions were heavy rains and thunderstorms. The residents reported the sewer had opened and that sewage was coming down Brave Trail. Following proper protocol, CentraComm contacted the on-call maintenance technician Michael Macias of Picerne Military Housing ("Picerne"), and Macias returned the phone calls to the residents and informed Harnett County and Colleen Holder, Picerne's Assistant Director of Maintenance Operations, of the SSO. Holder then sent Johnnie Giles, Picerne's Safety Manager, to the work site. Giles sent an e-mail to Picerne's Program Director John Shay, and Shay contacted Picerne's Regional Vice-President of Construction Ron Phillips. Phillips then went to the site. Because of a nearby transformer, the location of the break, and the weather conditions, the electricity was cut off at 1, 3, and 5 Brave Trail. Sandhills Utility Services installed a generator and left the generator on until power was restored.

The SSO incident ended at 8 a.m. on July 13, 2012. James (Curtis) Spears of Harnett County visited the SSO site at 8:40 a.m. on July 13. Power was restored at 1, 3, and 5 Brave Trail at 1 p.m. on July 13. Notification was provided to Mike Lawyer of the Division of Water Quality (DWQ) at 4:13 p.m. on July 13.

It was later determined that the immediate cause of the SSO was a break in a 5-year-old 10-inch force main pipe. The estimated volume of the SSO, determined by supervisory control and data acquisition (SCADA) data, is 37,999 gallons.

2

## Remedial Actions

The SSO was remediated by cutting out an old section of pipe and replacing it with new pipe. Sections of sidewalk affected by the SSO were replaced, and lime was placed on the yards of 1, 3, and 5 Brave Trail. The front yards and side yard common area of 1 and 3 Brave Trail were removed and repaired. The contaminated soil was taken to a dump site off post. The shared side yard between 3 and 5 Brave Trail, including mulch and trees, was also repaired. No resident concerns or complaints have been reported since the incident, and there have been no reports of damage to residents' personal property as a result of the SSO.

## Public Notice

The required public notice of the SSO was provided by Harnett County to the Fayetteville Observer and printed on July 16, 2012. The full text of the article is below:

LILLINGTON – A break in a sewer line in the Linden Oaks subdivision has been repaired without any adverse effects, Harnett County authorities said today. The force-main break happened Thursday, dumping an estimated 38,000 gallons of waste into Jump and Run Creek, according to a release from the Department of Public Utilities. Steps were taken immediately to pump the waste from the water, the release said. The line was repaired and no fish-kill was evident, the release said. The state Division of Water Quality was notified Friday and is reviewing the incident, the release said. – Nancy McCleary

## History of Line Breaks

In 2010 there were four breaks in the force main line, one of which was from the utility company hitting this line. The other three breaks were on the same street as the recent breaks but were at a different location on the uphill side of the second Air

3

Release Valve ("ARV"). Homes served by this force main were still under construction, so the SSO was minimal.

Subsequent to these breaks in 2010, Bragg Communities had Kimley-Horn and Associates, Inc. ("KHA"), the design engineer for the system perform an investigation on this line by installing surge monitoring devices to measure the surge pressures daily. According to the analysis of the measurements, surges did not appear to be the cause of the breaks. Bragg Communities then sent a section of pipe to the manufacturing company for analysis and the results showed pipe strength to be adequate. The pipe manufacturing representative then came to the site with his consultant and reviewed the results with our team and provided no additional advice or suggestions regarding the cause of the breaks.

Bragg Communities and KHA then observed that the ARVs were not working properly and had Harnett County replace them with the type of ARVs that have performed well elsewhere in Harnett's system.

Until the July 12th incident, there were no further breaks in this system or SSOs of any type since Bragg Communities took the above-described remedial measures.

Actions Taken to Prevent Recurrence of the SSO

After the July 12th incident, Bragg Communities contracted KHA to analyze the incident and, on July 19, 2012, a surge monitoring device was installed to determine if there were now any surges in the system that had not been detected in 2010. This monitoring provided little information, but did show signs of reduced negative pressures

4

when the ARVs were changed out. KHA submitted an engineering report, which recommended updating the ARVs with larger, improved stainless steel valves and installing an additional pressure monitor. Both recommendations have been implemented. No definitive conclusions have been reached at this time as to next steps, but Bragg Communities continues to investigate this sewer line to assess any additional remedial actions.

Bragg Communities had a geotechnical engineer perform auger sampling to test compaction along the sewer line. The engineer reported that the compaction at the auger sites appeared to have met the non-structural compaction requirements for sewer lines of this type. In addition, Bragg Communities, through KHA, engaged a third party materials testing company to perform testing on the failed pipe section. The testing company reported that the pipe strength was satisfactory. Bragg Communities also considered running a gauging pig through the line to check for pipe deflections, but determined not to undertake the gauging pig exploration at this time due to the difficulties of keeping the system running during the testing and the unreliability of the results.

Operation And Maintenance

Harnett County Department of Public Utilities ("HCDPU") operates and maintains the collection system for Bragg Communities. HCDPU wastewater treatment plant facilities are staffed 24 hours a day and 7 days a week. The collection system lift station is monitored with SCADA and reports any issues that are outside of the operating range in the form of visual and audio alarms that must be acknowledged to be

5

turned off. HCDPU has set the SCADA to alarm with any increases or decreases in gallons per minute or amperage draw in order to indicate a possible problem with an ARV that could result in pipe failure. We feel with this increased monitoring it will prevent any more leaks on the force main.

Impacts to the Environment and Public Health.

This SSO was accidental and happened in spite of a major effort by Bragg Communities after the 2010 breaks to avoid future breaks in the force main. Bragg Communities retained consultants and took recommended measures to avoid future releases. This included replacing ARVs and testing the pipe itself. Since the July 12th SSO, Bragg Communities has investigated and is continuing to investigate potential causes of the failure. Altogether, Bragg Communities has spent approximately $86,000 on its efforts to determine the cause of the breaks and to prevent them. In addition, Harnett County has performed maintenance on the ARVs every six months since the 2010 release and has carried out a good maintenance program, as described in this response.

Bragg Communities and Harnett County responded as quickly as possible to the July 12th SSO after being notified by residents. The SSO was stopped and the pipe replaced in less than fourteen hours, which required working through the night, a good part of which was during a heavy thunderstorm. All the adjacent properties were cleaned by removing any affected areas and then were re-landscaped. There have been no subsequent complaints from property owners in the area.

6

To the best of Bragg Community's and Harnett County's knowledge, there were no fish kills, recreational closures, public health effects or other observable impacts from the release. We acknowledge that approximately 38,000 gallons were released. It is uncertain how much reached Jump and Run Creek, which is more than one mile away from the site of the release. Observations at the time found no dead fish. It is believed this is due in part to the heavy volume of rain and resulting high flow at the time of the release. There have been no calls or reports regarding odors or other impacts downstream since the incident and we believe the high flows diluted the spill and flushed out the Creek.

Bragg Communities is very concerned about SSOs such as this one and will continue to make every effort to avoid them. Bragg Communities continues to analyze the design and study the information received from the field to either confirm if the cause was a faulty valve(s) or determine other possible causes. We will keep you updated on new information and our course of action.

Bragg Communities, LLC
By: Bragg-Picerne Partners, LLC
Its: Managing Member

cc: Glenn Dunn
Steve Ward

7

Z325403 v9.0



ACE North American Claims
ACE Environmental
P.O. Box 5103
Scranton, PA 18505-0510

Melody Curry
Claims Director

201-356-5217 tel
866-635-5698 fax

Melody.curry@acegroup.com

**ACE North American Claims**

March 27, 2013

VIA EMAIL

Rathje Woodward
300 East Roosevelt Rd, Ste. 300
Wheaton, IL 60188
Attn: Charles L. Philbrick
Email: cphilbrick@rathjewoodward.com

Re:  Insured          :   Bragg Communities, LLC
     Date of Loss     :   July 12, 2012
     Location         :   3 Brave Trail, Linden Oaks, Fort Bragg, NC
     Policy No.       :   CPM G23899048 002 (04/01/2010-04/01/2013)
     ACE No.          :   JY12J0601414

Dear Mr. Philbrick:

Illinois Union Insurance Company ("ACE") is handling the above-referenced matter. In this capacity, ACE appreciates Rathje Woodward's tender on behalf of Bragg Communities. LLC ("Bragg" or "insured"), giving notice of above-referenced matter. The purpose of this letter is to discuss certain issues that may operate to preclude or otherwise limit Bragg right to coverage for this matter, to reserve ACE's rights with respect to such issues, and to request further information with respect to the same.

Based on the information provided, the insured has advised that on July 12, 2012 as a part of operations and maintenance of the on-site water distribution and wastewater collection system at 3 Brave Trail, a 10-inch force main sewer pipe failed, causing approximately 37,99 gallons of sanitary sewage to be discharged and reach local surface waters. This was remediated by cutting out an old section of pipe and replacing it with new pipe. It is our understanding that on August 24, 2012, the North Carolina Department of Environmental and Natural Resources ("NCDENR") issued a Notice of Violation ("NOV") the insured. The insured further reported that they have incurred costs of approximately $11,505.17 in remediation and additional $48,495.76 to investigate, defend and implement improvements.

The Policy

Illinois Union Insurance Company issued to Bragg a Contractors Pollution Liability II Insurance Policy, number CPM G23899048 002, for the period April 1, 2010 to April 1, 2013 (the "Policy"). The Limits of liability are $10 million per "pollution condition" and in the aggregate, subject to a $25,000 self-insured retention ("SIR") per "pollution condition". Per Endorsement 006, "Picerne-Military Housing, LLC" is an "Additional Named Insured".

Although ACE is relying on the entire contents of the Policy in informing you regarding coverage, ACE specifically directs your attention to the following definitions, conditions, and exclusions contained in the Policy.



EXHIBIT
D

Claim means the assertion of a legal right, including but not limited to suits or other actions, alleging responsibility or liability on the part of the "insured" for "loss" arising out of "pollution conditions" to which this insurance applies.

Remediation costs means reasonable expenses incurred to investigate, quantify, monitor, mitigate, abate, remove, dispose, treat, neutralize, or immobilize "pollution conditions" to the extent required by applicable law. "Remediation costs" shall also include:

1. Reasonable legal cost, where such cost has been incurred by an "insured" with the prior written consent of the Insurer; and

2. Reasonable expenses required to restore, repair or replace personal property, owned by third parties, to substantially the same condition it was in prior to being damaged during the course of responding to a "pollution condition(s)".

Coverage Analysis

Insuring Agreement- The Insuring Agreement provides for all loss incurred in excess of the self-insured retention which the insured becomes legally obligated to pay, resulting from claims arising out of a pollution condition if the pollution condition results from covered operations and the claim is first made against the insured and reported to the Insurer, in writing during the policy period. Further, the covered operations which result in a claim must first commence on or after the April 1, 2007 Retroactive Date. In this instance, the insured has reported that a release of 37,999 gallons of sanitary sewage took place on July 12, 2012 at the aforementioned location.

To the extent that this matter does not involve a claim for a loss in which the insured is obligated to pay arising from a pollution condition resulting from covered operations, ACE reserves the right to disclaim coverage pursuant to the Insuring Agreement.

Further, it is ACE's understanding that the insured has incurred approximately $58K in this matter. As such, please be advised that pursuant to Section VII.C., ACE's prior written consent is necessary to incur remediation costs or legal defense expenses, except in the event of an emergency response. To this end, ACE reserves the right to deny coverage any remediation costs or legal defense expenses incurred without our written consent, except in the event of an emergency response.

Finally, the insured has reported that certain monies have been spent toward site improvements. Please note that these costs are not considered remediation costs as defined by the Policy, therefore, coverage is not provided for these costs and expenses.

Potential Coverage Issues

At this time, we take this opportunity to discuss other coverage issues that may apply to preclude or otherwise limit coverage for this matter.

Section VII, A. requires that insured to provide written notice of a claim or pollution condition, to the Insurer as soon as practical and in the event of a pollution the insured, must also take reasonable measures to provide immediate verbal notice to the Insurer. In this instance, based on the information provided, the insured had knowledge of a reported pollution condition in July 2012, however, written notice was not tendered to ACE until November 2012. Please note that to the extent that the insured's failure to provide earlier notice to ACE is deemed a material breach of the Policy's notice requirement to "provide immediate verbal notice", and thus vitiating any right to coverage the insured otherwise might have had, ACE reserves the right to disclaim coverage on this basis.

Section VI-Exclusions of the Policy outlines instances wherein coverage is not afforded, however, ACE specifically directs your attention to Exclusion D. which precludes coverage for:

D.    Fines and Penalties

Payment of fines, penalties, punitive, exemplary or multiplied damages based upon or arising out of any "insured's" knowing, willful or deliberate noncompliance with any statute, regulation, ordinance or administrative complaint. This exclusion also applies to any legal costs associated with such fines and penalties. This exclusion will not apply to coverage for punitive damages where such coverage is allowable by law.

In this matter, Bragg received a NOV from NCDERC on August 24, 2012. Please note that Exclusion D. specifically precludes coverage for fines and penalties and ACE reserves all rights in this regard.

Please also note that any actions undertaken by the insured to correct the site violations, if conducted by your own staff and employees, would also not be covered under your Policy pursuant to Exclusion E. Finally, to the extent that this matter arises out of the insured's intentional acts, please be advised that coverage would be precluded based on Exclusion F. and ACE reserves all rights in this regard.

The foregoing communication is without prejudice to ACE's rights pursuant to the terms, conditions, provisions and exclusions of the Policy. ACE reserves the right to assert any other coverage or policy defense under or arising out of the Policy that may now be applicable or later ascertained. No act of any agent, servant, or employee of ACE, including its attorneys, shall constitute a waiver or estoppel with respect to these rights.

Thank you for insuring with ACE. I look forward to your prompt response. In the meantime, should you have any questions, please do not hesitate to contact the undersigned directly.

Sincerely,


Melody Curry

cc:

Picerne- Military Housing, LLC
903 Armistead St.
Fort Braggs, NC 28307
Attn: Ron Phillips

3

**Complaint Exhibit D**
**P. 3**

# North Carolina
## DEPARTMENT OF INSURANCE

1201 Mail Service Center
Raleigh, NC 27699-1201

7005 3110 0002 4610 9667

Illinois Union Insurance Company
436 Walnut Street
P. O. Box 1000
Philadelphia, PA 19106

INComWG
LEGAL
WADYK